IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CORNELIUS RENTERIA AGUIRRE,

      Petitioner,

v.                                                    CIV 06-1062 WJ/KBM

ROBERT ULIBARRI, Warden,
and GARY K. KING,[1] Attorney General
of the State of New Mexico,

      Respondents.

# PROPOSED FINDINGS
## AND
## RECOMMENDED DISPOSITION

This matter is before the Court on Cornelius Renteria Aguirre's timely

petition for a writ of habeas corpus under 28 U.S.C. § 2254, which asserts five

grounds for relief.  *See Doc. 1.*  Because he filed after the effective date of the

Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), its standards

apply to this case.  *E.g., Michael Williams v. Taylor,* 529 U.S. 420, 429 (2000); *Lindh*

*v. Murphy,* 521 U.S. 320, 326-327 (1997).

---

[1]  As of January 1, 2007, Gary King was sworn in as New Mexico's Attorney General.  He
is  is hereby substituted under FED. R. CIV. P. 25(d)(1).  *See www.ago.state.nm.us/pio/pressrel/2007/
pdf/01-01-07_inaug.pdf.*

Respondents' Answer notes that Mr. King should be substituted as Attorney General, and I have done so. *See Doc. 10* at 4, ¶ 9.[2]  The Answer also asserts that the issues are exhausted and should be dismissed. *See id.* at 3, ¶ 7.

All of the issues can be resolved on the federal record.  Therefore an evidentiary hearing is unnecessary. *E.g., Trice v. Ward,* 196 F.3d 1151, 1159 (10th Cir. 1999), *cert. denied,* 531 U.S. 835 (2000); Rule 8(a), Rules Governing Section 2254 Cases in the United States District Courts.  I recommend that the § 2254 petition be dismissed with prejudice.

## I.  Procedural Background

A jury found Petitioner guilty of kidnaping, child abuse, and battery against a household member.  At sentencing, District Judge Stephen Bridgforth found kidnaping and child abuse to be "serious violent offenses," saying:  "'I remember the trial.  I don't know if you want me to enumerate any facts.  The facts in the case make it a (sic) serious violent offenses.'" *Exh. I* at 8 (Defendant Brief-In-Chief, quoting from Tape 4 of the sentencing hearing).  Judge Bridgforth made this finding for "Earned Meritorious Deductions Act" purposes.  Under the EMDA, inmates found to have engaged in "serious violent offenses" can earn a maximum of

---

[2]  All citations to Exhibits are those attached to Respondents' Answer. *See Doc. 10.*

four days of "good time" credit each month, whereas inmates convicted of other crimes can earn a maximum of thirty days per month. *E.g., id., see also* N.M. STAT. ANN.

§§ 33-2-34 (A)(1)–(2) (LexisNexis Supp. 2006) (hereinafter "*EMDA*").

After Petitioner admitted he was a "habitual criminal offender" with two prior felony offenses, Judge Bridgforth gave him a partially suspended sentence, with ten years incarceration followed by terms of probation and parole. *See Exhs. A-C.* On appeal defense counsel raised two issues – sufficiency of the evidence for the kidnaping conviction, and whether a judge finding seriousness for EMDA purposes violates the federal constitution. The Court of Appeals rejected both arguments, and the New Mexico Supreme Court denied certiorari. *See Exhs. L-O.*

Petitioner then pursued state habeas relief *pro se* where he reasserted the two issues raised on direct appeal and added claims of prosecutorial misconduct before the grand jury, several instances of ineffective assistance of trial counsel, and lack of access to the prison law library. In a decision that briefly explains his reasoning, Judge Bridgforth refused to reconsider the claims raised on direct appeal, did not mention the access to the courts claim, and denied the rest of the claims. *Exh. Q.* The New Mexico Supreme Court denied certiorari, *see Exhs. R-S,* and the federal petition followed where Petitioner raises the same claims as he did in the state

3

petition.  *See Doc. 1* at 6, 7, 9, 14-16.

## II.  Access To The Courts Claim Is Not Cognizable

Petitioner's access to the courts "claim" provides in full:

> The warden has closed the prison law library.  The
> purpose was to terminate legal access for all prisoners.
> The paralegal cannot help the Petitioner to identify the
> necessary facts and authorities to state a habeas claim
> upon which relief can be granted.  This interfers (sic)
> with exhaustion of state remedies.  As a result or
> prejudice of this denial this petition may be lacking
> necessary facts and authorities.

*Doc. 1* at 6.

Because he is trying to excuse perceived deficiencies in advance, I do not

consider this to be a substantive habeas claim.  If it is, the standard § 2254 form

Petitioner used specifically directs him to *not* cite legal authorities or arguments,

and to only briefly state the facts of his claims.  *E.g., id.*  He complied with these

directives and therefore the federal petition is not deficient.

Also, access to the court claims are not cognizable as a grounds for habeas

relief and instead must be pursued in separate civil action under 42 U.S.C. § 1983.

*E.g., United States v. Brittain,* 41 Fed. Appx. 246, 249 n.2 (10th Cir. ), *cert. denied,*

537 U.S. 913 (2002).  But any such civil suit would be unavailing.  It is plain that

Petitioner is receiving help from a prison paralegal, and there is no dispute that he

4

exhausted his state remedies and was able to timely file his federal petition.

*Compare Trujillo v. Williams,* 465 F.3d 1210, 1226-27 (10th Cir. 2006) (access to court claim where inmate was prevented from filing state habeas petition).

Moreover, as demonstrated by the remainder of these proposed findings, Petitioner cannot establish that the alleged denial of legal resources hindered his efforts to pursue a nonfrivolous claim in this suit. *E.g., Lewis v. Casey,* 518 U.S. 343, 353 (1996). Thus, I recommend that this "claim" be denied.

## III.  Analysis

### A.  *Standard of Review*

The Supreme Court and Tenth Circuit have discussed AEDPA standards of review in detail, and I will not reiterate them here. *E.g., Maynard v. Boone,* 468 F.3d 665, 669-71 (10th Cir. 2006) (and cases cited therein), *cert. denied,* ___ U.S. ___, 2007 WL 73653 (2007); *Stevens v. Ortiz,* 465 F.3d 1229, 1234-35 (10th Cir. 2006), *cert. denied sub nom, Zavaras v. Stevens,* ___ U.S. ___, 2007 WL 142539 (2007); *Parker v. Scott,* 394 F.3d 1302, 1308-09 (10th Cir. 2005) (same).

For all of the ineffective assistance of counsel issues, I apply the two-prong *Strickland* test. That is, Petitioner must show that counsel's conduct was constitutionally deficient and that but for the conduct, the result of the proceeding

would have been different.  Failure to make either showing defeats the claim.  *E.g.,*
*Smith v. Robbins,* 528 U.S. 259, 285-86 & n.14 (2000); *Strickland v. Washington,* 466
U.S. 668, 687 (1984); *United States v. Orange,* 447 F.3d 792, 796-97 & n. 5 (10th
Cir. 2006).

## B.  Overview Of Petitioner's Position

Petitioner does not deny that the incidents outlined below occurred.  *See*
*Doc. 1* at 14.  He believes, however, that his actions were provoked and justified
because his long-term girlfriend Anita caused him "severe trauma" by alleged
becoming pregnant by another man.  *See id.* at 7, 14, 15.  He believes that he "had
a constitutional right to protect himself and his children from harm and the
mother's custodial interference."  *Id.* at 14.  He also asserts that he instructed his
attorney to investigate the victim's pregnancy so that counsel could have:
"presented this information [so] the jury would have understood the incident," *id.,*
at 15; "included uniform jury instruction 14-222" the instruction for "sufficient
provocation," *id.;* and "informed the jury that in the late 1800s it was NM law that
a homicide in such circumstance was justifiable," *id.* at 15-16.

## C.  Sufficiency Of The Evidence & Related Ineffectiveness Claims

The Tenth Circuit has not decided whether sufficiency of the evidence
claims are reviewed as questions of law or questions of fact, or both, under

6

AEDPA.[3]  My review encompasses both,[4] and I find the Court of Appeals decision does not run afoul of either standard.

The long-standing constitutional standard for sufficiency claims is that announced by the Supreme Court in *Jackson*.  The "relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979) (emphasis original).  To analyze the state court's application of *Jackson* standard, the federal habeas court must determine the state substantive elements of the crime.  *E.g., Turrentine v. Mullin,* 390 F.3d 1181, 1197 (10th Cir. 2004), *cert. denied,* 545 U.S. 1106 (2005).  In relevant part the New Mexico criminal statute provides that "[k]idnapping is the unlawful . . . restraining . . . or confining of a person, by force,

---

[3]  *E.g., Jones v. McKune,* 2007 WL 196561 at * 2 (10th Cir. 2007) (citing *Hamilton v. Mullin,* 436 F.3d 1181, 1194 (10th Cir. 2006), *cert. denied,* ___ U.S. ___, 127 S. Ct. 560 (2006), as example where court has not decided, and *Spears v. Mullin,* 343 F.3d 1215, 1238 (10th Cir. 2003), *cert. denied sub nom, Powell v. Mullin,* 541 U.S. 909 (2004), as example where court viewed issue as question of law); *Maynard,* 468 F.3d at 673 (court viewed issue as mixed question of law and fact and therefore applied both standards).

[4]  *E.g., Webber v. Scott,* 390 F.3d 1169, 1178 (10th Cir. 2004) ("If sufficiency of the evidence is treated as a legal claim . . . the court must evaluate whether the OCCA unreasonably applied the standard from *Jackson*.  If sufficiency of the evidence is treated as a factual finding then the analysis . . . asks whether the OCCA's decision was an unreasonable determination of the facts.  We need not decide which standard applies here because Webber's claim fails under either standard.").

intimidation, *or* deception."   N.M. STAT. ANN. § 30-4-1(A) (LexisNexis 2004) (emphasis added).

Petitioner challenges the Court of Appeals decision because it "relied on the fact that the Petitioner would not allow Anita to use the telephone at the residence." *See Doc. 1* at 7, 14.  This is not factually accurate  The relevant facts were not in dispute on appeal, where Petitioner was represented by counsel.  While it is true that his parents' residence did not have a telephone, Petitioner fails to mention that his mother had a cell phone, a fact his attorney recited in briefing on direct appeal.  *Exh. I* at 1 ("There was no telephone in the apartment, but Cornelius' mother had a cell phone.").

The record demonstrates that Petitioner and Anita fought during an automobile on a trip on November 3, 2003.  Their two children were in the back seat, and Petitioner hit Anita in the face while she was driving.  When they arrived home, they continued the fight, and Petitioner hit Anita again when she was trying to give her crying daughter a bottle.  He also picked up the car seat with their young daughter in it, and threw it to a couch approximately five feet away.  After throwing the child, he repeatedly hit Anita.  On the evening of the next day, November 4, 2003, Petitioner became angry when Anita was feeding their daughter and struck Anita with his hands, a belt, and a flyswatter.  November 4th turned out

to be the same day that Anita's brother was murdered.  *See Exh. I* at 1-5 (Defendant Brief-in-Chief); *Exh. J* at 1-6 (State Answer Brief); *Exh. K* at 1 (Defendant Reply Brief); *Exh. L* at 2-3 (Court of Appeals' decision).

Both the State and the defense quoted the lengthy verbatim portions of the Anita's testimony that were relevant to the issue of restraint.  *See Exh. I* at 2-5; *Exh. J* at 4-5.  She testified that she did not leave on the 3rd or 4th because, even though she was not physically restrained, Petitioner told her she could not leave.  He told her he would find her if she left and she believed he would beat her again if she left. She had no where else to go, and Petitioner would not let her use the phone.  She was able to leave on the 5th because one of her aunts came to the residence to tell her of her brother's murder.  Petitioner let Anita leave, but would not let her take the children.  Anita's aunts persuaded her to contact the police.  *See Exh. I* at 1-5 (Defendant Brief-in-Chief); *Exh. J* at 1-6 (State Answer Brief); *Exh. K* at 1 (Defendant Reply Brief); *Exh. L* at 2-3 (Court of Appeals' decision).

After reviewing this evidence, the Court of Appeals found the evidence sufficient to find the victim was restrained by force or intimidation, reasoning in full:

> The standard of review for sufficiency of the
> evidence requires us to determine whether a rational jury
> could have found each essential element of the crimes

charged to be established beyond a reasonable doubt, when viewing the evidence in the light most favorable to the State and indulging all interferences in favor of the verdict. *State v. Wildgrube,* 2003–NMCA–108, ¶ 3, 134 N.M. 262, 75 P.3d 862. We do not reweigh the evidence or substitute our judgment for that of the jury. *State v. Mora,* 1997–NMCS–60, ¶ 27, 124 N.M. 346, 960 P.2d 789.

Here, the jury was instructed that in order to find Defendant guilty of kidnaping, it was required to find that Defendant restrained or confined the victim by force or intimidation and that he intended to hold her against her will to inflict physical injury on her. NMSA 1978, § 30-4-1(A)(2), (4) (2003). The evidence shows that the victim was restrained from leaving Defendant by his threats of finding her and her fear of subsequent beatings when he did. *See State v. Barerra,* 2002–NNMCA–098, ¶ 12, 132 N.M. 707, 54 P.3d 548 (finding that husband's refusal to allow wife to leave accompanied by other acts of domestic violence enough to show restraint); *State v. Muise,* 103 N.M. 382, 388, 707 P.2d 1192, 1198 (Ct. App. 1985) (stating that restraint may arise of out words, acts, gestures or other means resulting in a reasonable fear of personal injuries if the victim does not submit). Further, it is reasonable to infer from the evidence that Defendant held her against her will so as to inflict more beatings.

*Exh. L* at 3-4.

Although the opinion did not cite *Jackson,* "the sufficiency of the evidence standard it applied was identical to the Supreme Court's formulation." *Valdez v. Bravo,* 373 F.3d 1093, 1096 n.1 (10th Cir.), *cert. denied,* 543 U.S. 1008 (2004). The

*Wildgrube* decision the court relied upon specifically cites *Jackson* for the appropriate standard of review.[5]  Therefore, the state court decision is not "contrary" to established Supreme Court precedent under AEDPA.

Nor do I find the court's application of the *Jackson* standard "unreasonable." Petitioner contends there was insufficient evidence to support a kidnaping conviction because he did not physically restrain Anita in any way.  *Doc. 1* at 7. This misreads the statute and the caselaw.  In New Mexico, intimidation that results in the restraint constitutes kidnaping, and involuntary restraint is a common element to both kidnaping and false imprisonment.[6]  The *Muise* case cited by the

_____

[5]  *See State v. Wildgrube*, 134 N.M. 262, 266, 75 P.3d 862, 866 (N.M. App.), *cert. denied,* 134 N.M. 179, 74 P.3d 1071 (N.M. 2003); *see also Mora v. Williams,* 111 Fed. Appx. 537, 541-542 (10th Cir. 2004) (Tenth Circuit affirmed denial of federal habeas relief by this Court in the case cited by the Court of Appeals above, stating "The New Mexico Supreme Court relied on its own cases  adopting *Jackson's* sufficiency of the evidence standard. . . .  Whether or not it cited *Jackson,* the New Mexico Supreme Court applied the proper standard-whether a rational trier of fact could find guilt beyond a reasonable doubt."), *cert. denied,* 543 U.S. 1147 (2005).

[6]  *E.g., State v. Allen,* 128 N.M. 482, 513, 994 P.2d 728, 759 (N.M. 1999) ("Defendant asserts that the jury might have determined that the highest degree of the crime committed was false imprisonment based on a theory that the victim was unlawfully restrained but not held for service.  *See State v. Fish,* . . . distinction between kidnapping and false imprisonment is 'whether the defendant intended to hold the victim for service against her will'") (citation omitted), *cert. denied,* 530 U.S. 1218 (2000); *State v. Pisio,* 119 N.M. 252, 260, 889 P.2d 860, 868 (Ct.App.) ("The key to the restraint element in kidnapping is the point at which Victim's physical association with Defendant was no longer voluntary.  *See State v. Mares* . . . only when defendant became angry did victim become afraid, want to leave, and become aware that defendant might hold her against her will") (citation omitted), *cert. denied,* 119 N.M. 20, 888 P.2d 466 (N.M. 1995); *State v. Fish,* 102 N.M. 775, 779, 701 P.2d 374, 378 (Ct. App.) ("False imprisonment is a lesser included offense necessarily included in kidnapping by holding to service.  The distinction between the two offenses is whether the defendant intended to hold the victim to service against

Court of Appeals holds that the "restraint constituting false imprisonment may

arise out of words, acts, gestures or similar means which results in a reasonable fear

of personal difficulty or personal injuries if the victim does not submit." *State v.*

*Muise*, 103 N.M. 382, 388, 707 P.2d 1192, 1198 (Ct. App.), *cert. denied*, 103 N.M.

287, 705 P.2d 1138 (N.M. 1085).  A New Mexico kidnaping case holds likewise:

> Defendant argues that there was no testimony of any
> threats or use of intimidating words or gestures.  We
> disagree.  To intimidate is to "make timid[; t]o inhibit or
> discourage by or as if by threats."  Webster's II New
> College Dictionary 581 (1995).  Intimidation includes
> "putting in fear."  Black's Law Dictionary, 737 (6th ed.
> 1990); *see also State v. Sanchez*, 78 N.M. 284, 285, 430
> P.2d 781, 782 (Ct.App. 1967) [definition of element of
> intimidation for robbery].  Intimidation may result from
> words or conduct.  Intimidation creates an apprehension
> of danger of bodily harm while also reducing the victim's
> ability to resist the advances toward that harm.  *See*
> *Sanchez*, 78 N.M. at 285, 430 P.2d at 782.

*State v. Laguna*, 128 N.M. 345, 348, 992 P.2d 896, 899 (Ct. App.), *cert. denied*, 128

N.M. 149, 990 P.2d 823 (N.M. 1999).  Thus, under New Mexico law fear of

threatened physical violence is sufficient to establish restraint.[7]

---

her will."), *cert. denied*, 102 N.M. 734, 700 P.2d 197 (N.M. 1985).

[7] *E.g., State v. Singleton*, 130 N.M. 583, 589-90, 28 P.3d 1124, 1130-31 (Ct. App.) ("False
imprisonment can be based on words, acts, or gestures and does not require physical restraint of
the victim. . . .  The evidence presented at trial showed that Smith wanted to leave to call police
but did not, because Defendant threatened to stab her with the screwdriver if she did.  Smith
testified that Defendant put the screwdriver up to her side and told her that if she tried to leave,

The Court of Appeals did not, as Petitioner suggests, rely exclusively on the fact that the victim was not permitted to use the telephone.  Rather, it relied on Anita's testimony that Petitioner specifically forbade her to leave and threatened to "find" her if she did, and that she feared another beating if she tried to leave.  *E.g., Exh. I* at 3, 4 (Defendant Brief-In-Chief quoting victim's testimony).  Also contrary to what Petitioner appears to be requesting, neither this Court nor the Court of Appeals can make credibility determinations or substitute its judgment for that of the jury under the *Jackson* standard.  *E.g., Valdez,* 373 F.3d at 1097; *Messer v. Roberts,* 74 F.3d 1009, 1013 (10th Cir. 1996).  Because Anita's testimony established that reasonable fear caused her to remain in the house, I also cannot find the Court of Appeals decision itself is an unreasonable application of the *Jackson* standard. Therefore, I recommend that the sufficiency claim be rejected.

---

he 'would put that screwdriver through' her.  Smith believed that Defendant would stab her and testified that she did not attempt to leave because of Defendant's threat.  Smith's testimony was sufficient to support Defendant's conviction for false imprisonment."), *cert. denied,* 130 N.M. 558, 28 P.3d 1099 (N.M. 2001).

The Court of Appeal's parenthetical explanation of the *Barrera* case is incomplete.  The *Barerra* decision involved similar facts in that a husband beat his wife and told her she could not go next door to her sister's house.  However, the next day when the defendant went to work, the victim went to her sister's home.  The court did not have to decide the restraint issue because the defendant conceded that "the jury could infer restraint from the evidence.  This was a concession that Victim wanted to leave but did not feel free to do so because Defendant's words, acts, or gestures instilled a reasonable fear in her that prevented her from leaving."  *State v. Barrera,* 132 N.M. 707, 709, 54 P.3d 548, 550 (Ct. App.), *cert. denied,* 132 N.M. 674, 54 P.3d 78 (N.M. 2002).

I also recommend that the related ineffectiveness claims be rejected.

Petitioner argues that his attorney should have interviewed and called his parents

as witnesses to testify about his trauma due to Anita's pregnancy, that Anita did

not ask them for help, and that Anita used the cell phone in the past.  He also

argues that his attorney should have submitted this testimony along with the "14-

222" provocation instruction to the jury.  Petitioner characterizes these things as

"exculpatory," but the reason why counsel did not pursue any of these things is

evident.  *See Doc. 1* at 15-16.

Petitioner is mistaken that he had a legal defense to his actions.  Provocation

is not a defense to kidnaping, and any sort of pregnancy does not justify hitting

your mate.  Provocation is not even a defense to murder – it can only reduce a

murder charge to voluntary manslaughter.[8]  Thus, the evidence he wanted his

---

[8]  *See, e.g.,* N.M. UNIFORM JURY INSTRUCTIONS 14-221 (elements of voluntary
manslaughter include sufficient provocation); *id.,* 14-222 (definition of sufficient provocation);
14-301 – 14-333 (assault and battery instructions have no justification element or defense); *id.,*
14-401 – 14-406 (kidnaping instructions have no justification element or defense); *see also Guess
v. Gulf Ins. Co.,* 96 N.M. 27, 29, 627 P.2d 869, 871 (N.M. 1981) (and cases cited therein) (New
Mexico has abolished interfamily immunities for spouses and torts and children and parents);
NEW MEXICO JUDICIAL EDUCATION CENTER, DOMESTIC VIOLENCE BENCHBOOK, § 1.5.1
(available at http://jec.unm.edu/resources/benchbooks/dv/ch_1.htm#151) ("When confronted
with their violent behavior, abusers commonly avoid responsibility by . . . blaming it on outside
factors such as . . . provocation from the victim. . . .  The court may hear such statements as . . .
'She's having an affair. I just want to save my family.'"); *Indiana Law Protection Order Project*
(available at *www.law.indiana.edu/pop/domestic_violence*) ("Abusers frequently claim that their
victims provoke the violence that they perpetrate. . .  'Nagging,' burning dinner, or failing to
keep the children quiet is not provocation.  Even adultery is not a justification for domestic

attorney to introduce would have bolstered the prosecution's case and made

Anita's testimony more credible.  That Anita did not seek assistance from his

parents was immaterial – the case involved whether Anita was restrained by

intimidation and her testimony is sufficient to establish that element of the crime.

Petitioner has not met either prong of the *Strickland* test, and therefore I

recommend these ineffectiveness claims be rejected.

### D.  EMDA & Apprendi, et al. & Related Ineffectiveness Issues

Petitioner asserts that it is unconstitutional for a judge to determine

seriousness under New Mexico's EMDA and that his trial counsel was ineffective

for failing to be aware of the argument.  *See Doc. 1 at 9, 16.*  The basis for the claim

are the trilogy of decisions – *United States v. Booker,* 543 U.S. 220 (2005), *Blakely v.*

*Washington,* 542 U.S. 296 (2004), and *Apprendi v. New Jersey,* 530 U.S. 466 (2000).

On appeal, counsel conceded that the EMDA did not "run afoul of the

United State's Supreme Court decision in *Apprendi*" or a state case decided after

*Apprendi, Exh. I* at 9.  Nevertheless, counsel argued that these decisions were

wrongly decided in light of the subsequent Supreme Court decisions in *Blakely* and

*Booker, id.* at 10.  The Court of Appeals noted that the *Apprendi/Blakely* error was

---

violence.  The abuser alone is responsible for the violence that s/he perpetrates.").

not raised at the trial court level, but addressed the merits of the claim anyway.  It

held that the trial judge's finding of "seriousness" for EMDA good time credit

purposes does not "run afoul of the sixth amendment" because it "does not change

anything with regard to any maximum sentence . . .  All that changes is the amount

of time that Defendant can earn as credit on his sentence."  *Exh. L* at 4.   The

Court of Appeals declined to revisit state court decisions on the subject.  *Id.* at 4-5.

It did not mention the *Booker* decision.

Thusfar, all state decisions have concluded the *Apprendi/Blakely/Booke*r cases

do not apply to the EMDA.[9]   I have not found any Supreme Court decision that

holds otherwise, or that addresses the applicability of these cases to good time

credit eligibility generally.  As a result, the Court of Appeals decision is not

"contrary to" under AEDPA.  *E.g., Barkell v. Crouse,* 468 F.3d 684, 688-89 (10th

Cir. 2006) ("Mr. Barkell is not entitled to relief on this claim.  Mr. Barkell has

identified no United States Supreme Court precedent at the time of the Wyoming

court's decision that clearly established his right to an evidentiary hearing . . .

---

[9]  *See State v. Ayala,* 140 N.M. 126, ___, 140 P.3d 547, 549 (Ct. App.), *cert. denied,* 140 N.M. 279, 142 P.3d 360 (N.M. 2006); *State v. Worrick,* 139 N.M. 247, 252, 131 P.3d 97, 102 (Ct. App. 2006), *cert. granted,* 139 N.M. 353, 132 P.3d 1039 (N.M. 3/20/06); *State v. Bravo,* 139 N.M. 93, 98-99, 128 P.3d 1070, 1075-76 (Ct. App. 2005), *cert. quashed,* 140 N.M. 847, 149 P.3d 995 (N.M. 2006); *State v. Montoya,* 137 N.M. 713, 717-718, 114 P.3d 393,397-98 (Ct. App.), *cert. denied,* 137 N.M. 766, 115 P.3d 229 (N.M. 2005); *State v. Morales,* 131 N.M. 530, 532-33, 39 P.3d 747, 749-50 (Ct. App. 2001), *cert. denied,* 131 N.M. 738, 42 P.3d 843 (N.M. 2002).

Attractive as Mr. Barkell's legal contention may be, he has not shown that the

Wyoming Supreme Court decision" was "contrary to" under AEPDA).

I also find that the decision is not unreasonable.  First, the *Apprendi* line of

cases are limited to the sentence of incarceration a trial judge can impose based on

the jury's findings about the crime, not the method of calculating a possible earlier

release by the prison system.

Second, even though an award of good time credits can affect the length of

time a prisoner remains incarcerated, the credits are conceptually distinct from

statutory sentences or sentencing guidelines.  A New Mexico prisoner does not

have an absolute entitlement to good time deductions in the first instance.  The

award of any good time credit is dependent on the prisoner's efforts and the

classification officer's characterization of those efforts.[10]  Once awarded, whether or

not a prisoner benefits from awarded good time credits depends on his behavior

throughout his term of imprisonment.[11]  Unlike a sentence imposed for past

---

[10] "To earn meritorious deductions, a prisoner . . . *must be an active participant* in
programs recommended for the prisoner by the classification supervisor and approved by the
warden." *EMDA*, § 33-2-34(A) (emphasis added).  "A prisoner *may earn* meritorious
deductions *upon recommendation by the classification supervisor,* based on the prisoner's active
participation . . . and the quality of the prisoner's participation." *Id.,* § 33-2-34(B) (emphasis
added).

[11] "[D]eductions earned by a prisoner may be forfeited" for misconduct violations.  *Id.,*
§33-2-36; *see also id.,* § 33-2-37 ("Meritorious deductions forfeited . . . may be restored in whole
or in part to a prisoner who is exemplary in conduct and work performance for . . . not less than

behavior, whether a prisoner earns or loses good time credits is entirely dependent on the prisoner's future behavior throughout his entire period of incarceration, regardless of whether a crime was "serious" or not.

Given these distinctions, I cannot conclude that the New Mexico Court of Appeals rationale is "unreasonable," even though it did not specifically discuss the *Booker* decision. *E.g., Short v. Sirmons,* 472 F.3d 1177, 1184 (10th Cir. 2006) ("When reviewing a state court's application of federal law, we are precluded from issuing the writ simply because we conclude in our independent judgment that the state court applied the law erroneously or incorrectly.") (internal quotation and citation omitted).  The harmlessness standard that would apply in this habeas review underscores these distinctions, and also provides an alternative basis to deny habeas relief.

"Failure to submit a sentencing factor to the jury, like failure to submit an element to the jury, is not structural error" and nonstructural errors do not require automatic reversal of a state conviction.  *Washington v. Recuenco,* ___ U.S. ___, 126 S. Ct. 2546, 2553 (2006).  Therefore,

> [e]ven if the state court decision was contrary to, or
> involved an unreasonable application of, clearly

six months following the date of forfeiture.").

18

> established federal law, our analysis is not complete.
> Unless the error is a structural defect in the trial that
> defies harmless-error analysis, we must apply the
> harmless-error standard of *Brecht v. Abrahamson,* 507
> U.S. 619 (1993) . . . .  Under *Brecht,* habeas relief is
> proper *only if the error had a substantial and injurious
> effect or influence in determining the jury's verdict.*

*Bland v. Sirmons,* 459 F.3d 999, 1009 (10th Cir. 2006) (quotations and citations

omitted) (emphasis added), *cert. denied,* ___ U.S. ___, 2007 WL 872447 (2007).

Judge Bridgforth's finding of seriousness did not effect the jury's the elements

of the crimes of conviction or the sentences authorized for those crimes under New

Mexico law.  The sentence the judge imposed was within the statutory limits, yet

Judge Bridgforth cut the term of incarceration by half.  If he had wanted to ensure a

longer term of incarceration, he did not have use his EMDA finding to do so.  He

could have imposed the full sentence himself and doubled the amount of time

Petitioner is actually serving.  Accordingly, I find this claim without merit and

harmless and recommend that it be rejected.

For the same reasons, I also recommend that the related ineffectiveness

claims be rejected on both *Strickland* prongs.  Counsel had no basis to raise a claim

that had already been rejected by the state courts at the time of trial and, for the

reasons above, no prejudice resulted for failing to raise the claim at the trial level.

### E.  *Prosecutorial Misconduct During Grand Jury Proceedings*
### *& Related Ineffectiveness Issues*

Petitioner's final claims are that during the grand jury proceedings, the prosecutor "lied to and manipulated that grand jury" and "used bad faith to bring the charge of kidnapping." *Doc. 1* at 14.  He explains that the "lies" and "bad faith" resulted when the prosecutor did not inform the grand jurors that Anita "could have left the house at any time," "had become pregnant from another man," or that "Petitioner had a constitutional right to protect him self and his children." *Id.*  He faults his trial attorney for failing to investigate this aspect of the case. *Id.* at 16.  The trial court found such claims "were not raised prior to trial [and] therefore cannot support post conviction relief either directly or through a claim of ineffective assistance of counsel," citing "Rule 5-601 NMRA" as the authority for enforcing a waiver. *Exh. Q* at 2, ¶ 3.

Rule 5-601 is a rule of trial procedure and is not a strict waiver rule because it contains a good cause requirement.   The rule does not say anything about the ability to raise the issue of ineffective assistance of counsel claims in post-conviction proceedings.  In the *Howard* case, I recommended that this Court not enforce waivers when the trial judge fails to acknowledge or discuss the exception to the waiver requirement.  I recommend the same here.  *See Howard v. Ulibarri,*

CIV 04-1415 MCA/KBM (Doc. 39, at 11-12).

In the *Howard* findings, I also discussed in detail why I agreed with the State's assertion that challenges to state grand jury proceedings are not cognizable in federal habeas particularly, as here, when a petit jury subsequently finds the petitioner guilty of the charges.  There I also noted that the Supreme Court and Tenth Circuit hold that a grand jury indictment cannot be challenged on insufficiency grounds, an argument that Petitioner seems to be making here.  *See id.* at 21-23.

Petitioner asserts that the prosecutor "lied," and in some decisions the Tenth Circuit has assumed, without deciding, that a constitutional challenge based on alleged perjured testimony before the grand jury is actionable in § 2254 proceedings.[12]  But Aguirre's use of the word "lied" does not in fact describe perjured testimony by a witness.  It describes the prosecutor failing to submit the evidence, discussed above, that Petitioner mistakenly believes was exclupatory.  Thus, there is due process claim implicated by Petitioner's assertions.

Assuming for the sake of argument that there could be a conceivable due process violation, based on my discussion above I would hold any such error

---

[12]  *See, e.g., Moreland v. Madrid,* 2000 WL 1594219 at *2 (10th Cir. 2000) (citing *Talamante v. Romero,* 620 F.2d 784 (10th Cir.), *cert. denied,* 449 U.S. 877 (1980), and *Doran v. Stratton,* 930 F.2d 33 (10th Cir. 1991)), *cert. denied,* 532 U.S. 961 (2001).

harmless.[13]  With no basis for counsel to have challenged the grand jury

proceedings, Petitioner cannot establish the prejudice prong under *Strickland.*

Accordingly, I recommend that Petitioner's grand jury claim be rejected

under the "contrary to" and "unreasonable" standards under AEDPA, or under an

independent review.

Wherefore,

IT IS HEREBY RECOMMENDED that all issues raised in the § 2254

petition *(Doc. 1)* be denied on the merits.

---

THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10
DAYS OF SERVICE of a copy of these Proposed Findings and Recommended
Disposition they may file written objections with the Clerk of the District Court
pursuant to 28 U.S.C. § 636(b)(1).  A party must file any objections with the
Clerk of the District Court within the ten-day period if that party wants to have
appellate review of the proposed findings and recommended disposition.  If no
objections are filed, no appellate review will be allowed.

---

_____
UNITED STATES MAGISTRATE JUDGE

---

[13]  *See, e.g., Tisthammer v. Williams,* 49 Fed. Appx. 757, 762 & n.1 (10th Cir. 2002) (New
Mexico conceded constitutional right in grand jury context, and Tenth Circuit analyzed under
harmless error standard rather than "structural" error for which prejudice is presumed), *cert.
denied,* 538 U.S. 928 (2003).